1

2                    **UNITED STATES DISTRICT COURT**
                         **DISTRICT OF NEVADA**
3

4

5    ROBERT PARLANTI and DONNA          )    2:05-CV-01259-ECR (RJJ)
     PARLANTI,                          )
6                                       )
          Plaintiffs,                   )
7                                       )
     vs.                                )    **Order**
8                                       )
     MGM MIRAGE, a Delaware corporation;)
9    MGM MIRAGE ACQUISITION CO. #61, a  )
     Nevada corporation; MANDALAY       )
10   RESORT GROUP, a Nevada corporation )
     TBG FINANCIAL, form of business    )
11   entity unknown; MANDALAY BAY       )
     RESORT GROUP SUPPLEMENTAL          )
12   EXECUTIVE RETIREMENT PROGRAM PLAN  )
     ADMINISTRATOR, form of business    )
13   entity unknown, DOES 1 through 100,)
     inclusive; and ROE CORPORATIONS 1  )
14   through 100, inclusive,            )
                                        )
15        Defendants.                   )
                                        )
16   _____)

17

18

19        This is an action brought by Robert and Donna Parlanti,

20   Plaintiffs, under the Employee Retirement Income Security Act of

21   1974 ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u> (2006).  Defendants MGM

22   Mirage, MGM Mirage Acquisition Company #61, Mandalay Resort Group,

23   and Mandalay Bay Resort Group Supplemental Executive Retirement

24   Program Plan Administrator ("Casino Defendants") have moved this

25   Court to dismiss (#36) Plaintiffs' first amended complaint (#31)

26   and to strike (#47) Plaintiffs' surreply and documents attached

27   thereto (##44-46).  The other named Defendant, TBG Financial, has

28   not joined the motions at bar.  All references to Defendants in

     this Order refer only to the Casino Defendants.

Defendants filed their motion to dismiss (#36) Plaintiffs'
first amended complaint (#31) on April 17, 2006.  On May 16, 2006,
Plaintiffs, Donna Parlanti and Robert Parlanti, opposed (#37)
Defendants' motion to dismiss (#36).  Thereafter, Defendants
replied (#38) in support of their motion to dismiss (#36) on May
30, 2006.  Without leave of this Court, Plaintiffs filed their
memorandum in surreply (#46) to Defendants' reply (#38) on June
16, 2006.  Defendants moved to strike (#47) Plaintiffs' surreply
memorandum (#46) on June 30, 2006.  Plaintiffs opposed (#49) on
July 20, 2006, and Defendants replied (#62) on August 3, 2006.

Plaintiffs have requested oral argument in their opposition
(#37) to Defendants motion to dismiss (#36), in their surreply
(#46) in connection thereto, and in their opposition (#49) to
Defendants motion to strike (#47).  This Court finds these motions
(## 36, 47) suitable for decision without a hearing.  Therefore,
in accordance with Local Rule 78-2, we decide the pending motions
(##36, 47) without oral arguments.

## I. Background

The following background is taken from Plaintiffs' first
amended complaint (#31).

Plaintiff Robert Parlanti began employment with Circus Circus
on July 3, 1983.  Almost fifteen years later, on June 18, 1998,
Circus Circus established the Supplemental Executive Retirement
Program ("SERP" or "the Plan").  The introduction to the Plan
indicates that it was intended to be an "unfunded deferred
compensation supplemental retirement arrangement for a select
group of management or highly compensated employees" (1st Am.

Compl., Ex. 1, Introduction, (#31).)  Robert Parlanti was a participant in the SERP.  In 1999, Circus Circus was acquired by Mandalay Bay Resort Group, and the SERP was amended to reflect the change in ownership (1st Am. Compl., Ex. 2 (#31)).  On January 1, 2001, the SERP was further modified by the adoption of a second amendment (1st Am. Compl., Ex. 3 (#31)).  Plaintiff then retired on September 1, 2002 and elected to receive his benefits in an annual annuity paid quarterly for life.  He thereafter began receiving his benefits in quarterly installments in accordance with his benefits election.  After Plaintiff's retirement, Mandalay Resort Group merged with MGM through a multi-step process involving an initial merger with MGM Acquisition Co. #61, a wholly-owned subsidiary of MGM.  On April 15, 2005, a third amendment to the SERP was adopted (1st Am. Compl., Ex. 4).  The merger was completed on April 24, 2005.

By a letter dated June 9, 2005 (1st Am. Compl., Ex. 5), Robert Parlanti was informed by a representative of MGM Mirage that the SERP would be terminated and that he would receive his remaining benefits in a lump sum cash payment.  In accordance with the letter, he received a statement showing the amount of his benefits and lump sum payment on June 15, 2005.  Robert Parlanti and his wife, Donna Parlanti, arranged to have a meeting with MGM representatives and counsel on June 21, 2005.  At that meeting, they allege they were told that the SERP had been terminated along with any administrative review process and that their only recourse was to file suit.  Plaintiffs were also allegedly told that they were to have no further contact with MGM representatives regarding the SERP.  On July 1, 2005, Robert Parlanti received the

3

lump sum payment, which was discounted to present value by six percent.  The lump sum check was received at approximately the same time that one of Robert Parlanti's regular quarterly benefit payments was due.  Plaintiffs allege that a tax expert informed them that the check would be considered annual income for tax purposes.  They allege that they therefore cashed the check "under protest" in order to pay their living expenses and their tax liabilities.

Plaintiffs then brought suit in the Clark County District Court of Nevada.  The action was removed to this Court by Defendants under 28 U.S.C. § 1441 (Notice of Removal (#1)). Plaintiffs' complaint alleged claims of breach of contract, tortious breach of the covenant of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, fraud (intentional misrepresentation), fraud (concealment), negligent misrepresentation, conversion, intentional infliction of emotional distress, and loss of consortium.  (Compl., Ex. 1, Notice of Removal (#1).)  Defendants moved to dismiss (#5) Plaintiffs claims as preempted by ERISA and Plaintiffs moved to remand (#12) the action to state court.  By our Order (#25) of February 15, 2006, this Court granted Defendants motion to dismiss (#5) and denied Plaintiffs' motion to remand (#12).  Plaintiffs were given fifteen days within which to file an amended complaint.  Thereafter, Plaintiffs filed their First Amended Complaint (#31), which alleges claims under ERISA § 502(a)(1)(B) and (3), 29 U.S.C. § 1132(a)(1)(B) and (3).  It is this First Amended Complaint (#31) that is the focus of Defendants present motion to dismiss (#36).

## II. Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if "it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief." Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996).  On a motion to dismiss, "we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990)) (alteration in original).  Moreover, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1403 (9th Cir. 1996) (citation omitted).

Although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Accordingly, "[c]onclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss." In re Stac Elecs., 89 F.3d at 1403 (citation omitted).

Review on a motion pursuant to Fed. R. Civ. P. 12(b)(6) is normally limited to the complaint itself. See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond. Fed. R. Civ. P. 12(b); see United States v. Ritchie, 342 F.3d 903, 907 (9th

Cir. 2003).  "A court may, however, consider certain materials --
documents attached to the complaint, documents incorporated by
reference in the complaint, or matters of judicial notice --
without converting the motion to dismiss into a motion for summary
judgment."  Ritchie, 342 F.3d at 908.

If documents are physically attached to the complaint, then a
court may consider them if their "authenticity is not contested"
and "the plaintiff's complaint necessarily relies on them."  Lee,
250 F.3d at 688 (citation, internal quotations and ellipsis
omitted).  A court may also treat certain documents as
incorporated by reference into the plaintiff's complaint if the
complaint "refers extensively to the document or the document
forms the basis of the plaintiff's claim."  Ritchie, 342 F.3d at
908.  Finally, if adjudicative facts or matters of public record
meet the requirements of Fed. R. Evid. 201, a court may judicially
notice them in deciding a motion to dismiss.  Id. at 909; see Fed.
R. Evid. 201(b) ("A judicially noticed fact must be one not
subject to reasonable dispute in that it is either (1) generally
known within the territorial jurisdiction of the trial court or
(2) capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned.").

### III. Standing

Defendants argue that Donna Parlanti's claims against them
should be dismissed because she lacks standing to sue under ERISA.
Donna Parlanti is clearly not a participant or a fiduciary under
the plan.  See 29 U.S.C. § 1002(7), (21).  Therefore, to have
standing to sue under either paragraph one or three of 29 U.S.C.

6

§ 1132(a), she must properly allege that she is a "beneficiary." The term "beneficiary" is statutorily defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).

Plaintiffs complaint appears to allege that Donna Parlanti has standing as a beneficiary because she "has a community property interest in her husband"s [sic] retirement benefits and because defendants understood and intended that inducements offered to employees would also benefit their spouses." (1st Am. Compl. ¶32 (#31).)  In their opposition (#37) to Defendants' motion to dismiss (#36), Plaintiffs argue along similar lines, stating, "Plaintiffs are not asking this court to adjudicate community property issues.  Donna Parlanti simply has equal standing as the sole beneficiary of her husbands benefits.  Should he die, she will stand in his place.  Her name in the caption determines nothing except her standing."  (Pls.' Opp. 11 (#37).)

To the extent that Plaintiffs allege in this portion of their opposition (#37) that Donna Parlanti would receive benefits under the SERP in the event of her husband's death, the argument is clearly undermined by their contrary allegation in their First Amended Complaint (#31).  There, they state that Robert Parlanti had "bargained for an *actual* life annuity as opposed to an actuarial life annuity and had, in consideration for this . . . benefit, surrendered his money making capacity, as well as agreed to a reversion of benefits to the CASINO DEFENDANTS upon his death."  (1st Am. Compl. ¶50(a).)  The terms of the SERP provide various alternatives, including the Normal Retirement Benefit,

7

under which "no Benefits shall be paid to any Beneficiary
following the death of the Participant."  (SERP ¶6.2(a), Ex. 1,
1st Am. Compl. (#31).)  It appears from Plaintiffs' first amended
complaint that this was the benefit Robert Parlanti selected.
From the allegations in the first amended complaint, which we take
as true for the purposes of this motion to dismiss, it does not
appear that Donna Parlanti "is or may become entitled to a
benefit" under the SERP.  Therefore, she is not a "beneficiary"
for the purposes of ERISA and lacks standing in this action.  She
is therefore dismissed without prejudice from this action.[1]  All
further references in this order to "Parlanti" or "Plaintiff"
refer exclusively to Plaintiff Robert Parlanti.

### IV. Exhaustion

As a general rule, "a claimant must avail himself or herself
of a plan's own internal review procedures before bringing suit in
federal court." Diaz v. United Agric. Employee Welfare Benefit
Plan & Trust, 50 F.3d 1478, 1483 (9th Cir. 1995) (quoting Amato v.
Bernard, 618 F.2d 559, 566-68 (9th Cir. 1980)).  The exhaustion
requirement, which is not explicitly provided for in ERISA,
applies for the following reasons:

> [T]he exhaustion doctrine is consistent with ERISA's
> background, structure and legislative history and serves
> several important policy considerations, including the

---

[1]In the caption of Plaintiffs' surreply (#46) (the propriety of
which is discussed separately below), Plaintiffs indicate that the
surreply (#46) was filed concurrently with Plaintiffs' request for
dismissal without prejudice of Plaintiff Donna Parlanti.  No such
request was filed with this Court.  Nonetheless, Donna Parlanti is
dismissed without prejudice because it appears that Plaintiffs
sought her dismissal under Fed. R. Civ. P. 41(a)(1).

reduction of frivolous litigation, the promotion of consistent treatment of claims, the provision of a nonadversarial method of claims settlement, the minimization of costs of claim settlement and a proper reliance on administrative expertise.

Id. While district courts "have authority to enforce the exhaustion requirement in ERISA actions, . . . there are exceptions to the general rule." Dishman v. UNUM Life Ins. Co. Of Am., 269 F.3d 974, 984 (9th Cir. 2001). "A district court has discretion to waive the exhaustion requirement, and should do so when exhaustion would be futile." Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1416 (9th Cir. 1989) (citations omitted).

In their motion to dismiss (#36), Defendants argue that Plaintiff has not alleged that he exhausted the SERP claims procedure. They also note, "Plaintiff[] suggest[s] that [he] could not do so because the SERP was terminated is simply a rehash of [his] prior argument (which was soundly rejected by this Court)." (Mot. 15). It appears to the Court, however, that the issue of exhaustion and the applicability of the futility exception have not been previously addressed by this Court.[2] In his opposition, Plaintiff points to paragraphs of the first

_____

[2]In their reply (#38), Defendants clarify that they are referring to our Order (#25) of February 15, 2006. In that Order, we addressed Plaintiffs' argument that the state law claims in their initial complaint (#1) did not "relate to" an ERISA plan because the SERP had ceased to exist. We found that a plaintiff can sue under ERISA after an ERISA plan is terminated. Our analysis did not question or undermine Plaintiffs' assertion that the SERP no longer exists, and it certainly does not bar Plaintiff from now arguing that the termination of the SERP made any attempt at exhaustion futile.

9

amended complaint (#31) that he contends establish futility.
Defendants respond by arguing that the allegations of futility are
"bare assertions of futility [which] are insufficient to bring a
claim within the futility exception," Diaz, 50 F.3d at 1485, and
that the allegations of futility "lack credibility."

Contrary to Defendants' characterization, Plaintiff's
allegation of futility is more than a "bare assertion."
Defendants rely primarily on Diaz, which involved a motion for
summary judgment brought on the basis of the plaintiffs' failure
to exhaust the plan's administrative remedies.  Id.  In that case,
the plaintiffs argued that administrative review was futile
because the defendants' continued denial of benefits demonstrated
a lack of intent to ever pay.  Id.  The court noted that because
the defendants were denying benefits based on the plaintiffs'
failure to pursue administrative review, the plaintiffs' argument
was circular.  Id.  Furthermore, the court found that plaintiffs'
assertion was a bare assertion of futility.  Id.

Unlike the plaintiffs in Diaz, it appears that Parlanti has
alleged facts that go beyond a bare assertion of futility.  Here,
Plaintiff alleges that during a June 21, 2005 meeting with an MGM
representative and counsel for Defendants, who told him that
"there were no available means for exhausting administrative
remedies as the PLAN no longer existed" and that he "had no
recourse but to sue for damages in a court of law."  (1st Am.
Compl. ¶5 (#31).)  He also alleges that he was told that "all
[SERP] administrative functions and/or board and/or oversight
proceedings had been dismantled[,] there were no internal
appellate procedures as the plan no longer existed[, and] the

1   company would offer no further explanation or justification for

2   its actions." (1st Am. Compl. ¶5.)  Lastly, he alleges that

3   during this meeting, he and his counsel were advised that they

4   were "to [n]ever contact again any employee or representative of

5   [Defendants] as such entities were now represented by counsel who

6   affirmatively declined to offer administrative recourse and

7   affirmatively stated that [Plaintiff's] only recourse was to sue

8   in a court of law for damages." (1st Am. Compl. ¶5.)  These

9   allegations certainly go beyond bare assertions of futility.

10   Rather, Plaintiff alleges particular facts that, if true, would

11   clearly establish futility.

12       Defendants attach the Affidavit of Cynthia Moehring to their

13   reply (#38) in support of their motion to dismiss (#36).  They

14   contend that Plaintiff's assertion of futility lacks credibility

15   and that Ms. Moehring's affidavit "completely refutes Plaintiffs'

16   allegations of futility." (Defs.' Reply 10 (#38).)  On a motion

17   to dismiss, "[a]ll allegations of material fact in the complaint

18   are taken as true and construed in the light most favorable to the

19   non-moving party." In re Stac Elecs. Sec. Litig., 89 F.3d 1399,

20   1403 (9th Cir. 1996).  Therefore, we take Plaintiff's factual

21   allegations concerning the content of the June 21, 2005 meeting as

22   true for the purposes of this motion.[3]  We could only consider the

23   ───────────────

24       [3]At various points, Defendants indicate that exhaustion is "a
    jurisdictional prerequisite to an ERISA claim" (Defs.' Mot. To
25   Dismiss 15 (#36)).  (See also Defs.' Reply in Supp. Of Mot. To
    Dismiss 8 (#38); Defs.' Reply in Supp. Of Mot. To Strike 7-8 (#63).)
26   This argument is used in part to justify the attachment of Ms.
    Moehring's affidavit to Defendants' reply (#38) in support of their
27   motion to dismiss.  Defendants assertion that the failure to exhaust
    limits this Court's jurisdiction, however, is not well taken.
28

11

1  affidavit of Ms. Moehring if we treated the motion as one for

2  summary judgment.  Doing so here, however, would not be proper

3  because the affidavit was only attached to a reply memorandum

4  (#38) and Plaintiff has not had an adequate opportunity to

5  respond.  Because Plaintiff's allegations are sufficient to allege

6  futility, this Court declines at this juncture to dismiss his

7  claims for failure to exhaust.

8

9  ## V. Top Hat Plan Exception

10  Some of Plaintiff's claims are based on Defendants' alleged

11  fiduciary duties under ERISA.  Defendants contend that, because

12  the plan is allegedly a "top hat plan," ERISA's provisions

13

14  _____

15  In arguing that exhaustion is a jurisdictional prerequisite,
   Defendants rely on Amato v. Bernard, 618 F.2d 559 (9th Cir. 1980),
16  which established that the exhaustion requirement applies in ERISA
   actions.  In that case, the Ninth Circuit said, "Ordinarily, a court
17  possesses jurisdiction . . . whether or not the aggrieved party has
   exhausted administrative remedies.  But, as a matter of sound
18  policy, courts usually decline to intercede and in most instances
   act within their discretion in doing so."  Id. at 566 (emphasis
19  added) (quoting Winterberger v. Gen. Teamsters Auto Truck Drivers &
   Helpers Local Union 162, 558 F.2d 923, 925 (9th Cir. 1977)).  The
20  Ninth Circuit then concluded "that the federal courts have the
   authority to enforce the exhaustion requirement in suits under
21  ERISA, and that as a matter of sound policy they usually do so."
   Id. at 568.  This language in Amato makes it clear that the courts
22  have jurisdiction over ERISA claims, regardless of exhaustion, but
   that they generally exercise their discretion and decline to
23  intervene where the plaintiff has failed to exhaust his or her
   remedies under the plan.  To the extent that the Northern District
24  of California has interpreted this language in Amato as holding that
   exhaustion is a "jurisdictional prerequisite" in ERISA suits, Lee v.
25  Prudential Ins. Co. Of Am., 673 F.Supp. 998 (N.D.Cal. 1987), we
   respectfully disagree.  The holding in Amato clearly focused on a
26  court's discretion in exercising its jurisdiction absent exhaustion;
   nowhere did it hold that a court's jurisdiction is at all limited by
27  the exhaustion requirement.

28

relating to fiduciary duties do not apply and these claims should be dismissed.[4]

Plaintiff's second cause of action seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).  It alleges, "[D]efendants, and each of them, while acting as plan fiduciaries, violated the terms of the plan by violating their obligations imposed by Federal and State law . . . . As a result of these violations, PARLANTI has been deprived of benefits due him under the terms of the plan, as those terms are controlled and regulated [sic] Federal and State law."  In his prayer for relief, Plaintiff requests that this Court "declare that the DEFENDANTS are fiduciaries . . . of the plans," "declare the DEFENDANTS have breached their fiduciary responsibilities" to Plaintiff, and "enjoin the DEFENDANTS from further violations of [their] fiduciary responsibilities."  (1st Am. Compl., Prayer for Relief ¶¶2-4 (#31).)

Certain plans are exempted from the portions of ERISA that deal with fiduciary duties in employment benefit plans.  ERISA § 401(a), 29 U.S.C. § 1101.  In particular, ERISA exempts "a plan which is unfunded and is maintained by an employer primarily for

---

[4] In their reply, Defendants also contend that even if the plan is not a top hat plan, Plaintiff has not stated a claim for breach of fiduciary duty because the termination of a plan is not subject to ERISA's fiduciary duty provisions.  (Defs.' Reply 6-7 (#38).) This argument was first raised in Defendants' reply memorandum (#38), and Plaintiff has not had an adequate opportunity to respond. We therefore pass this argument without further note.  See Daghlian v. DeVry Univ., Inc., 461 F.Supp.2d 1121, 1144 n.37 (C.D.Cal. 2006) (noting that it is generally improper for a moving party to raise different legal arguments in a reply memorandum and that courts have discretion to decline to consider arguments so raised).

the purpose of providing deferred compensation for a select group of management or highly compensated employees," § 1101(a)(1). These plans are commonly known as top hat plans.[5]  Defendants contend that the SERP is "clearly" a top hat plan, and that therefore Plaintiff's claims under ERISA's fiduciary duty provisions should be dismissed.  They rely solely on the SERP's introductory language, which states: "It is intended that the Plan and Trust shall constitute an unfunded deferred compensation supplemental retirement arrangement for a select group of management or highly compensated employees for purposes of the . . . [unreadable text] Employee Retirement Security Act of 1974." (Supplemental Executive Retirement Plan, Ex. 1, 1st Am. Compl. 27 (#31).)  In his response, Plaintiff, without elaboration, asserts that discovery is required to determine whether the SERP qualifies as a top hat plan.

The Ninth Circuit explored the contours of ERISA's top hat plan exclusion in Duggan v. Hobbs, 99 F.3d 307 (9th Cir. 1996). The district court in that case conducted a bench trial and held that the plan administrator was not personally liable for breaches of ERISA fiduciary obligations because the plan was exempted as a top hat plan.  Id. at 308.  On appeal, the parties agreed that the plan was unfunded and that the plaintiff was highly compensated, but they disputed whether the plan provided "deferred compensation" and was maintained for a "select group," as required for exemption under § 1101(a)(1).  Id. at 310.  In its analysis,

_____

[5] Top hat plans are also exempted from ERISA's participation and vesting coverage provisions, 29 U.S.C. § 1051-61, and funding coverage provisions, 29 U.S.C. §§ 1081-86.  29 U.S.C. §§ 1051, 1081.

the Circuit relied on the Department of Labor's following

explanation of the top hat exception:

> [I]n providing relief for "top hat" plans from the broad
> remedial provisions of ERISA, Congress recognized that
> certain individuals, by virtue of their positions or
> compensation level, have the ability to affect or
> substantially influence, through negotiation or otherwise,
> the design and operation of their deferred compensation
> plan, taking into consideration any risks attendant
> thereto, and therefore, would not need the substantive
> rights and protection of Title I.

Id. at 310, 312-13 (quoting DOL Opin. Letter 90-14A).  In

determining that the plaintiff was part of a select group, the

Circuit looked at the fact that the plaintiff was the only

employee covered by the agreement, he constituted less than 5

percent of the work force, and he "exerted influence over the

design and operation of [the agreement] through his attorney and

his negotiations."  Id. 312-23.  There is no allegations in the

case at bar that would allow us to similarly conclude that the

SERP only covered a "select group."  And, unlike in Duggan, it

does not appear that the parties presently agree as to whether the

plan was unfunded or covered only management or highly compensated

employees.  Defendants here only rely on the introductory language

of the SERP, which only indicates an attempt to create a top hat

plan.  No facts have been alleged that would allow us to conclude

at this stage that the SERP is a top hat plan.


### VI. Waiver

Defendants rely on the Third Circuit's opinion in Kemmerer v.

ICI Americas Inc., 70 F.3d 281 (3d Cir. 1995), in arguing that

Plaintiff is precluded from seeking equitable relief under 29

U.S.C. § 1132(a)(3) because he accepted the lump sum payment on

termination of the SERP.  It appears that Defendants are asserting acceptance of the check constituted a waiver.  <u>Kemmerer</u>, however, did not address the applicability of waiver or other equitable defenses to ERISA claims.  The portion of <u>Kemmerer</u> on which Defendants rely addresses damages.  After granting the plaintiffs summary judgment on the liability issue, the district court in that case found that the plaintiffs failed to prove at trial that they were damaged.  The Third Circuit, in affirming the district court, discussed the trial record and evidence of damages.  It appears that Defendants are relying on the following *dicta* in the opinion:

> [W]e are troubled by the fact that appellants, though claiming they were aggrieved by the plan termination, failed to request equitable relief requiring ICI to comply with the plan terms.  Even though ICI advised them in November 1991 that it was changing the distribution schedule, they brought this action almost one year later, and only after ICI made one payment to them, and they filed a motion for summary judgment only after ICI made two of the accelerated payments. . . . Surely, if appellants really felt that ICI had injured them, they could have rejected the accelerated payments and sought injunctive relief according to the terms of the plan.  Given the circumstances, it seems obvious that appellants sought to play a no-lose game--trying to capitalize on the freed-up funds but claiming damages based on utterly speculative projections as to the financial consequences had the plan not been terminated.

70 F.3d at 290.  The Third Circuit's notation that certain facts regarding damages are "troubling" does not amount to a holding that the plaintiffs waived any rights by accepting accelerated payments.

Despite Defendants assertion that they are arguing waiver, neither party has adequately briefed the waiver issue.  The Southern District of California has held that equitable defenses are available to defendants in actions under 29 U.S.C.

16

§ 1131(a)(3).  Chitkin v. Lincoln Nat'l Ins. Co., 879 F.Supp 841, 853 (S.D.Cal. 1995).  This Court is persuaded by the Chitkin court that equitable defenses are available to a claim under 29 U.S.C. § 1132(a)(3).  Therefore, Defendants may assert a defense of waiver.  Defendants argue that Plaintiff waived his right to seek equitable relief where he alleges he received "expert advice" prior to cashing the check.  This portion of Plaintiff's first amended complaint, however, indicates that it was a tax expert that Plaintiff consulted, and that the check was cashed "'under protest' and only on account of the requirement that [Plaintiff] immediately suffer tax consequences from which there was no relief."  (1st Am. Compl. ¶6 (#31).)  Against this backdrop, it appears that dismissal on the basis of waiver would be premature at this stage.  It is not yet clear whether Plaintiff's cashing of the check constituted the "intentional relinquishment or abandonment of a known right."

## VII. Relief

The bulk of Defendants' motion to dismiss (#36) focuses on the issue of damages.  They argue that Plaintiff cannot seek consequential damages under 29 U.S.C. § 1132(a)(1)(B) and that the damages Plaintiff seeks are too speculative.  They also argue that Plaintiff is seeking monetary damages, which are unavailable under 29 U.S.C. § 1132(a)(3).  Plaintiff's opposition, which is submitted in pro per, does not address these arguments except to say in summary form that he is "not asking for damages-- consequential or otherwise," but rather seeks "the restoration of [his] lifetime benefits accrued" (Pls.' Opp. 5 (#37)) and the

1  reinstatement of the plan "in an amount which makes [his] annuity
2  whole" (Pls.' Opp. 8 (#37)).

3      ERISA clearly lays out what relief a participant can seek in
4  a civil action concerning an employee benefit plan.  The relief
5  provided for by ERISA is read narrowly; the Supreme Court has said
6  in this regard:

7      We have observed repeatedly that ERISA is a "'comprehensive
       and reticulated statute,' the product of a decade of
8      congressional study of the Nation's private employee
       benefit system."  We have therefore been especially
9      reluctant to tamper with [the] enforcement scheme" embodied
       in the statute by extending remedies not specifically
10     authorized by its text.

11 Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 208, 209
12 (2002).  A participant can sue to recover benefits due under the
13 plan, enforce rights under the plan, or clarify rights to future
14 benefits under the plan.  29 U.S.C. § 1132(a)(1)(B).  In addition,
15 under 29 U.S.C. § 1132(a)(3), a participant can sue for equitable
16 relief based either on violations of ERISA's subchapter I, 29
17 U.S.C. §§ 1001-91, or the terms of the plan.

18

19 A.  *Consequential Damages*

20     Defendants correctly note that § 1132(a)(1)(B) does not
21 provide for the award of consequential damages.  In his prayer for
22 relief, Plaintiff requests restitution for benefits wrongly
23 withheld and "all damages incurred in consequence thereof." (1st
24 Am. Compl., Prayer for Relief ¶6 (#31).)  The final words of the
25 paragraph requests relief in the form of consequential damages.
26 Paragraph 50 of the first amended complaint, which is situated in
27 a portion of the complaint that alleges the general facts
28 involved, also refers to damages, such as the payment of tuition

out-of-pocket, that are consequential in nature.  Consequential
damages cannot be recovered under ERISA, and the portions of
Plaintiff's claims requesting consequential damages are dismissed.
It appears, however, that Plaintiff also requests forms of relief
permissible under ERISA.  For example, Plaintiff requests
restitution, which is a proper form of relief under
§ 1132(a)(1)(B), and equitable relief to prevent future violations
of the plan, which is proper under § 1132(a)(3).  Therefore, we do
not dismiss either of his causes of action on the basis of
damages.

B.   *Speculative Damages and Non-Monetary Damages*

        Defendants largely argue that Plaintiff is seeking monetary
damages that are too speculative under § 1132(a)(1)(B) and
constitute non-equitable relief impermissible under § 1132(a)(3).
To the extent that Defendants argue the requested damages are too
speculative under § 1132(a)(1)(B), it appears that the requested
relief is proper equitable relief under § 1132(a)(3).  Such relief
in the form of an injunction requiring future payment of sums not
presently ascertainable, was noted by the Supreme Court to be non-
monetary equitable relief in <u>Great-West Life & Annuity Ins. Co. v.
Knudson</u>, 534 U.S. at 211-12.  There, the majority drew a
distinction between an injunction to compel "specific performance
of a past due monetary obligation" and an injunction to compel
specific performance requiring later payment to "prevent future
losses that [are] incalculable."  <u>Id.</u> at 211.  It held that the
former constituted legal relief not typically available in equity,
and therefore not available under § 1132(a)(3).  <u>Id.</u>  The Court,

however, indicated that its holding did not extend to an
injunction to compel future payments of amounts not yet
ascertainable.  Such relief is equitable, and the Court implies
that it would be available under § 1132(a)(3).  Id. at 211-12.  In
so doing, the Court referred to its prior holding in Bowen v.
Massachusetts, 487 U.S. 879 (1988), and noted that there, the suit
involved "an injunction of calculating payments going forward."
It distinguished Bowen from Great-West, saying "Bowen has no
bearing on the unavailability of an injunction to enforce a
contractual obligation to pay money past due."  Great-West, 534
U.S. at 212.

It appears from this strongly worded Supreme Court *dicta* that
precisely because enforcement of the Plan would result in future
payments that are presently unascertainable, the requested relief
is equitable and proper under § 1132(a)(3).  To the extent,
however, that Plaintiff seeks restitution of money past due or
otherwise withheld, the requested relief is not equitable and is
therefore improper under § 1132(a)(3).  The other provision under
which Plaintiff sues, § 1132(a)(1)(B), however, explicitly allows
a Plaintiff to "recover benefits due to him under the terms of his
plan."  There is no allegation that the past due benefits
Plaintiff claims to be entitled to are speculative, and it appears
that restitution is a proper remedy under § 1132(a)(1)(B).[6]

---

[6]The availability of restitution for money past due, of course,
depends on Plaintiff proving that Defendants have withheld benefits
owed to him.  It does not appear that Plaintiff so alleges in his
first amended complaint (#31).

20

The Third Circuit's decision in <u>Kemmerer v. ICI Americas</u> <u>Inc.</u>, 70 F.3d 281, on which Defendants primarily rely, does not indicate otherwise.  In <u>Kemmerer</u>, the plan at issue involved accounts maintained by employees during their employment.  <u>Id.</u> at 284.  The plaintiffs in that case had elected to receive and had begun receiving their benefits in fixed annual payments.  <u>Id.</u> at 285.  When the company terminated the plan, it distributed the remaining benefits (plus ten percent interest) in three annual installments.  <u>Id.</u>  The plaintiffs commenced their lawsuit nine months after receiving their first accelerated benefit payment; they received their second payment prior to filing for summary judgment.  <u>Id.</u> at 290.  They did not contend that they were not paid the full amount of their account balances.  Rather, they argued that the accelerated payments imposed tax liabilities, management fees, and transaction costs; in essence, they sued "for damages because they were paid money owed to them."  <u>Id.</u> at 185.

It appears that the plaintiffs in <u>Kemmerer</u> did not seek enforcement of the terms of the plan.  Instead, they sought to, by suit, be reimbursed for taxes, management fees, and transaction costs that they argue would not have been incurred had they been paid in accordance with their benefits elections.  The plaintiffs' requested relief was thus materially different from the equitable relief referenced in <u>Great-West</u> and requested by the Plaintiff at bar.  In essence, the plaintiffs in <u>Kemmerer</u> sought to retain the accelerated payments as well as damages that would compensate them for rather speculative alleged damages.  It appears, however, that they did not seek to reinstate the plan and have the plan enforced on its terms, which would carry with it some risk that there would

be no remaining funds in the unfunded plan.  Id. at 290-91.  They

sought to eliminate the risks associated with an unfunded plan by

retaining the accelerated payments and seeking speculative damages

in court.

In contrast, it appears that the Plaintiff at bar is seeking

to enforce the terms of the plan.  He requests equitable relief to

prevent a continuation of the alleged violations of the plan

(Prayer for Relief ¶7).  And, to the extent that the plan is not a

top hat plan and any of the Defendants bear fiduciary duties under

ERISA, he seeks an injunction against further alleged breaches

(Prayer for Relief ¶4).  If the Court were to award the requested

relief, determining what Plaintiff would be paid under the plan

over the course of his life would be speculative.  Future tax

rates, the viability of the Plan, and his lifespan are all

uncertainties in that equation.  But, ordering enforcement of the

plan terms does not require an present-day calculation of

Plaintiff's benefits.  Rather, it would only require that benefit

payments be made in accordance with the Plan.  Such specific

performance is a form of equitable relief permissible under

§ 1132(a)(3).  Plaintiff would, of course, bear the risk that such

relief might, in the end, result in a smaller net sum than the

lump sum payment.

### VIII. Miscellaneous Issues

*A. Liability for Plan Termination and Unilateral Contract*
*Principles*

In Plaintiff's opposition and Defendants' reply, the parties

discuss whether termination of the SERP was permissible under the

22

plan's terms.  (Pls.' Opp. 8 (#37); Defs.' Reply 4 (#38).)  In
this regard, Plaintiffs also argue that unilateral contract
principles should apply in this case.  (Pls.' Reply 6-7 (#37).)
Defendants do not, by their motion (#36), seek dismissal on this
basis.  Therefore, we do not here address the propriety of
terminating the SERP or interpret the SERP's termination
provisions.

*B. Breach of Contract and Promissory Estoppel Claims*

    In their opposition, Plaintiffs briefly refer to claims for
breach of contract and promissory estoppel.  (Pls.' Opp. 8-9
(#37).)  Defendants' reply correctly notes that these claims were
previously dismissed by this Court's Order of February 15, 2006
(#25) as state law claims preempted by the adoption of ERISA.
(Defs.' Reply 7 (#38).)  Plaintiffs' amended complaint (#31) does
not allege claims of promissory estoppel or breach of contract.
Therefore, we need not address this issue further.

*C. Request for Judicial Notice*

    Defendants request that this Court take judicial notice of
certain facts concerning the merger.  (Defs.' Mot. 5 n.1 (#36).)
Under Fed. R. Ev. 201(d), a court "shall take judicial notice if
requested by a party and supplied with the necessary information."
Defendants have not supplied this court with the information that
would be required to determine that the facts asserted are not
subject to reasonable dispute and are therefore appropriate for
judicial notice under Fed. R. Ev. 201(b).  Defendants' request for
judicial notice is therefore denied.

23

### IX. Motion to Strike (#47) Plaintiffs' Surreply (#46)

Plaintiffs' opposition (#37) was submitted in *pro per*.  After Defendants motion (#36) was fully briefed, Plaintiff, through his attorney, filed a surreply (#46) in opposition to Defendants' motion to dismiss (#36) and supporting affidavits (##44-45).  Defendants moved to strike the surreply (#46) by their motion (#47) filed June 30, 2006.  Plaintiffs filed their opposition (#49) to the motion to strike on July 20, 2006, and Defendants replied (#62) on August 3, 2006.

Plaintiffs have not sought leave to file an over-length surreply in accordance with the local rules.  They contend that the surreply was necessary to address to important issues, namely the futility of exhaustion and the appropriateness of SERP termination under the Plan, and was appropriate because Defendants had submitted evidence with their reply (#38) in support of the motion to dismiss (#36).  This Court has not considered the affidavit of Ms. Moehring in connection with Defendants' motion to dismiss.  Furthermore, it appears that further discussion of the plan terms relating to termination was unnecessary because Defendants' motion to dismiss did not seek dismissal on this basis.  The added discussion of the exhaustion requirement was also unnecessary given that Plaintiffs' first amended complaint (#31) alleges facts indicating futility and that Plaintiffs' opposition (#37) to Defendants' motion to dismiss adequately argues that attempts at exhaustion were or would have been futile.

Therefore, we will grant Defendants' motion to strike (#47) Plaintiffs' surreply (#46).

24

1

2    **IT IS THEREFORE HEREBY ORDERED THAT**, the motion to dismiss

3   (#36) brought by Defendants MGM Mirage, MGM Mirage Acquisition Co.

4   #61, Mandalay Resort Group, and Mandalay Bay Resort Group

5   Supplemental Executive Retirement Program Plan Administrator is

6   **GRANTED** in part as follows: Plaintiff Donna Parlanti's claims are

7   dismissed without prejudice and Plaintiff Robert Parlanti's claim

8   for consequential damages is dismissed with prejudice.

9

10    **IT IS THEREFORE HEREBY FURTHER ORDERED THAT**, the motion to

11   dismiss (#36) brought by Defendants MGM Mirage, MGM Mirage

12   Acquisition Co. #61, Mandalay Resort Group, and Mandalay Bay

13   Resort Group Supplemental Executive Retirement Program Plan

14   Administrator is **DENIED** with respect to Plaintiff Robert

15   Parlanti's claims for relief under 29 U.S.C. § 1132(a)(1)(B) and

16   (3) exclusive of his claim for consequential damages.

17

18    In connection were their motion to dismiss (#36), Defendants

19   request an award of the attorneys' fees and costs incurred in

20   defending this action as provided for by 29 U.S.C. § 1132(g)(1).

21   Plaintiffs, in their reply (#37), also request attorneys' fees.

22   At this stage, it would be premature to award attorneys' fees or

23   costs to either party.  Therefore, we do not address the parties'

24   requests for attorneys' fees in this interlocutory Order.

25   ///

26   ///

27   ///

28   ///

1    **IT IS THEREFORE HEREBY FURTHER ORDERED THAT**, the motion to

2    strike (#47) Plaintiffs' surreply (#46), brought by Defendants MGM

3    Mirage, MGM Mirage Acquisition Co. #61, Mandalay Resort Group, and

4    Mandalay Bay Resort Group Supplemental Executive Retirement

5    Program Plan Administrator, is **GRANTED**.

6

7

8    DATED: March_____ , 2007.
16

9                                                     Edward C. Reed.

10                                          UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28